UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NEVER TOO HUNGOVER, LLC,<br><br>    Plaintiff<br><br>v.<br><br>DRINKAID LLP, et al.,<br><br>    Defendants | Case No.: 2:23-cv-01347-APG-EJY<br><br>**Order Granting in part NTH's Renewed Motion to Strike, Granting Defendant Ryan Foo's Motion to Dismiss, and Denying NTH's Motions for Injunctions**<br><br>[ECF Nos. 4, 5, 14, 25] |

Plaintiff Never Too Hungover, LLC (NTH) alleges that the defendants, a Singaporean individual (Ryan Foo) and two Singaporean companies (Drinkaid LLP and Drinkaid Wellness PTE. LTD.), are infringing on its DRINKADE trademark.  The defendants are proprietors of a product sold under the trademark DRINKAID.  They have filed documents in this case without counsel.  NTH moves to strike the corporate defendants' filings because they cannot appear without counsel.  It also moves for injunctive relief against all defendants to restrain them from infringing on NTH's DRINKADE mark in the United States.  Foo moves to dismiss based on lack of personal jurisdiction.

Because the corporate defendants may not appear before me without counsel, I grant in part NTH's renewed motion to strike and do not consider the corporate defendants' filings.  I grant Foo's motion to dismiss because NTH does not make a prima facie showing that Foo's conduct satisfies the minimum contacts test for personal jurisdiction and because exercise of jurisdiction over him would be unreasonable.  I also deny NTH's motions for injunctive relief because NTH does not demonstrate that it is likely to establish personal jurisdiction over the corporate defendants.

# I. BACKGROUND[1]

NTH is a Nevada company based in Las Vegas that markets and sells a hangover remedy beverage under its registered DRINKADE trademark. ECF No. 4-1 at 3-4. The defendants market and sell a hangover remedy supplement in a capsule form under the DRINKAID trademark. *Id.* at 5; ECF No. 14 at 2-3. Drinkaid LLP and Drinkaid Wellness PTE. LTD. are Singaporean companies and "operate primarily in Singapore." ECF Nos. 14 at 2; 1 at 2. Ryan Foo is an owner of the DrinkAid companies and lives in Singapore. ECF Nos. 1 at 2, 3-4; 14 at 2. Foo applied for and was granted a trademark registration for the DRINKAID mark by the United States Patent and Trademark Office. ECF Nos. 26-2; 26-3; 26-4. The defendants operate a website (drinkaid.co) that markets and sells DrinkAid and is accessible in the United States. ECF No. 4-1 at 5-6. They have sold and shipped 323 orders to the United States since 2020, one of which was shipped to Nevada. ECF No. 14 at 2, 8-9. They conduct digital advertising, mostly targeted at Singapore, but not targeted at the United States or Nevada. *Id.* at 2, 6-7.

NTH sued the defendants for federal and state trademark infringement, false designation of origin, and unfair competition. ECF No. 1. NTH also moved for a temporary restraining order and a preliminary injunction on the same day. ECF Nos. 4; 5. Foo notes that there was "no prior communication" between the parties before the lawsuit. ECF No. 15 at 3. NTH admits that initiating the lawsuit was its "first measure." ECF No. 20 at 8 (emphasis omitted).

---

[1] Some of the background facts about the defendants' business operations are taken from Foo's motion to dismiss and opposition to the motions for injunctive relief. Foo did not provide these facts in the form of a sworn affidavit, but NTH does not object to them, contradict them, or provide any reason why I should not accept them as true. Moreover, Foo is proceeding pro se. Therefore, I will treat these facts as if Foo provided them in the form of an affidavit. *See Perez-Portillo v. Garland*, 56 F.4th 788, 795 (9th Cir. 2022) (not requiring statements made by a pro se party to be in the form of an affidavit).

## II. NTH'S RENEWED MOTION TO STRIKE

NTH previously moved to strike the corporate defendants' answer because they could not appear without counsel. ECF No. 16. Magistrate Judge Youchah denied NTH's first motion to strike and provided the defendants 10 days to retain counsel. ECF No. 17. The corporate defendants did not obtain counsel within the allotted time, so NTH renews its motion to strike their filings. ECF No. 25.

It has been over two months since Magistrate Judge Youchah's order. The corporate defendants still have not retained counsel. Because "[c]orporations . . . must appear in court through an attorney," I grant NTH's renewed motion to strike. *In re Am. W. Airlines*, 40 F.3d 1058, 1059 (9th Cir. 1994); *see also Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993) ("[A] corporation may appear in the federal courts only through licensed counsel."). I therefore will not consider ECF Nos. 14 and 15 as to the corporate entities, but because Foo may appear pro se, those filings remain valid as to Foo.

## III. FOO'S MOTION TO DISMISS

Foo moves to dismiss, arguing that I lack personal jurisdiction over him. Specifically, he notes that he and his companies are based in Singapore, have minimal commercial activities in the United States, have shipped only one order of DrinkAid to Nevada, and do not target advertising at Nevada or the United States. NTH responds that it has established a prima facie case of specific personal jurisdiction over Foo based on Nevada's long-arm statute, and that Foo has not met his burden of showing that exercising jurisdiction over him is unreasonable.[2]

---

[2] NTH argues that "[w]hen no federal statute governs personal jurisdiction," I should apply Nevada's long-arm statute. ECF No. 26 at 5. It does not contend that Federal Rule of Civil Procedure 4(k)(2) applies here, so I do not analyze personal jurisdiction under that rule.

3

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). If, as here, the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* (quotation omitted). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Id.* (quotation and internal citation omitted). However, I do not have to credit an allegation that is "a conclusory legal statement unsupported by any factual assertion[s]." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 n.5 (9th Cir. 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800.

Nevada's long arm-statute permits me to exercise jurisdiction to "the limits of due process set by the United States Constitution." *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 602 (9th Cir. 2018) (citing Nev. Rev. Stat. § 14.065). Constitutional due process requires that Foo have "certain minimum contacts" with Nevada "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted). Foo's connection with Nevada must be such that he "should reasonably anticipate being haled into court [here]." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Lastly, due process requires the exercise of personal jurisdiction over Foo to be based on "his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014)

(quotation omitted).  NTH's contacts with the forum "cannot be decisive" in determining the exercise of personal jurisdiction over Foo. *Id.* at 285 (quotation omitted).

### A. Minimum Contacts Test

In the context of tort-like claims such as trademark infringement, I may exert specific personal jurisdiction over Foo if he (1) purposefully directs his activities at Nevada, (2) the lawsuit arises out of or relates to his Nevada-related activities, and (3) the exercise of jurisdiction is reasonable. *Will Co., Ltd. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022).  NTH "bears the burden of satisfying the first two prongs of the test," and if it does, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068-69 (9th Cir. 2017) (quotation omitted).

#### 1. Purposeful Direction

NTH argues that Foo purposefully directed activities toward Nevada by applying for the DRINKAID trademark and by controlling or directing the DrinkAid companies, which operate a website marketing and selling DrinkAid that is accessible to Nevada residents.  Because Foo admits that he is a proprietor of DrinkAid and does not differentiate between his conduct and the companies' conduct, I will consider the companies' conduct as part of Foo's personal jurisdiction analysis. *See* ECF Nos. 14 at 2, and 21.

"To determine whether a defendant 'purposefully directed' its activities toward the forum," I ask "whether the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023) (quotation omitted).  An "intentional act" requires only that the defendant have "intent to perform an actual,

physical act in the real world." *Schwarzenegger*, 374 F.3d at 806.  Applying for a trademark registration, operating a website, and selling products are all intentional acts.

Those acts are relevant to the personal jurisdiction analysis only if they are expressly aimed at Nevada.  NTH does not explain why Foo's application for a trademark registration is expressly aimed at Nevada specifically, so the second element is not met as to Foo's registration of the DRINKAID trademark.  And mere operation of a website that offers for sale a product does not, by itself, establish express aiming. *Herbal Brands*, 72 F.4th at 1091.  However, "if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to that forum, the defendant 'expressly aimed' its conduct at that forum." *Id.* at 1093.  As to whether a sale was made in the "regular course of business," relevant factors are the seller's identity (e.g., an individual or a business entity), the nature of the website used, its total number of sales, and its advertising practices. *Id.* at 1094.  Foo's companies sell DrinkAid through a website that specifically markets the product, has sold at least hundreds of orders of the product, and engages in advertising.  One order of DrinkAid was shipped to a customer in Nevada.  Therefore, NTH has made a prima facie showing that Foo expressly aimed conduct at Nevada by selling and shipping an order of DrinkAid to Nevada in the regular course of his business.

The third element of the purposeful direction analysis requires the plaintiff to show both that harm was suffered in the forum and that the harm was foreseeable. *Will Co., Ltd.*, 47 F.4th at 926.  A corporation can suffer harm in the forum of its principal place of business. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1113-14 (9th Cir. 2002).  In a trademark infringement case, this element is satisfied if the defendant was notified about the infringement and resultant harm in that forum specifically. *Herbal Brands*, 72 F.4th at 1091, n.2.  In *Herbal Brands*, the Ninth

6

Circuit held that the plaintiff's three cease-and-desist letters, which "informed defendants that Plaintiff was based in Arizona and alleged that the sales harmed plaintiff in Arizona," satisfied the third element because "Plaintiff's claims are based on trademark infringement, [so] without the letters Defendants might not have known that Plaintiff would be harmed in Arizona." *Id.* at 1089, 1091 n.2.

NTH argues that harm was suffered in Nevada and that the harm was foreseeable because Nevada is its principal place of business. However, there are no facts or evidence showing that Foo knew that harm was likely to be suffered in Nevada. Unlike in *Herbal Brands*, before this lawsuit there was no prior communication between the parties in which NTH identified itself as a Nevada company or notified Foo that his conduct was causing harm in Nevada. NTH alleges that the defendants "committed tortious acts that they knew or should have known would cause injury to NTH in Nevada," but this is a conclusory legal statement without factual support that I do not credit. ECF No. 1 at 4; *see Williams*, 851 F.3d at 1025 n.5. NTH also alleges that "[u]pon information and belief, Defendants. . . knew of the DRINKADE Products sold by NTH when Defendants. . . adopted and began using the Infringing Mark." ECF No. 1 at 8-9. However, even if Foo knew of NTH's product, there is no non-conclusory allegation that he knew NTH was based in Nevada or would be harmed in Nevada. Therefore, NTH has not met its prima facie burden of showing that Foo purposefully directed his conduct at Nevada. Although this alone is reason enough to dismiss Foo, I evaluate the remainder of the minimum contacts test.

### 2. *Claim Arising Out of or Related to Defendant's Forum-Related Conduct*

"The second prong of the specific personal jurisdiction inquiry requires that a plaintiff's claims 'arise out of or relate to the defendant's contacts with the forum.'" *Herbal Brands*, 72 F.4th at 1096 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. ----, 141 S. Ct.

1017, 1025 (2021)). A "strict causal relationship" or "but-for causation" are sufficient but not necessary to meet this element. *Ayla, LLC v, Alya Skin Pty. Ltd.*, 11 F.4th 972, 983 n.5 (9th Cir. 2021). NTH challenges Foo's use of the DRINKAID mark based on the grounds that it is confusingly similar to NTH's own mark and therefore causes harm to NTH, such as reduced sales and reputational harm. Foo's contact with Nevada is one sale and shipment of DrinkAid into the state. NTH's claimed harms arise out of or relate to that sale, so this part of the test is satisfied. *See Herbal Brands*, 72 F.4th at 1096 ("Plaintiff's [trademark infringement] claims—which allege harm caused by Defendants' sales of products—clearly arise out of and relate to Defendants' conduct of selling those same products to Arizona residents.").

### 3. *Reasonableness*

"To evaluate reasonableness, [I] use a seven-factor balancing test that weighs: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Freestream Aircraft*, 905 F.3d at 607. As to the seventh factor, "[w]hether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) (quotation omitted). "No one of the factors is dispositive in itself. Instead, [I] balance all seven." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003).

Although Foo does not explicitly address the seven factors, he essentially argues that jurisdiction would be unreasonable because his companies' primary operations are in Singapore

with minimal commercial activities in the United States, they have shipped only one order to Nevada, and they do not target marketing at Nevada or the United States. He also notes that he is proceeding pro se "given the financial constraints of our small business based in Singapore." ECF No. 21 at 1. NTH argues that Foo does not address the specific reasonableness factors and has not met his burden to show unreasonableness.

### a. Extent of Purposeful Interjection

The first factor weighs heavily against exercising jurisdiction because Foo's companies have sold and shipped only one order of DrinkAid to Nevada. *See Herbal Brands*, 72 F.4th at 1097 ("The fairness prong allows for the argument that the exercise of jurisdiction is not appropriate because a defendant sold only a small number of products to forum residents."). NTH contends that Foo's application for a trademark in the United States should count as purposeful interjection, but that act does not show a high level of interjection into Nevada's affairs in particular, especially because Foo does not target advertising using the trademark in Nevada and has sold only one order to a Nevada resident.

### b. Burden on the Defendant

"The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Industry Company v. Superior Court*, 480 U.S. 102, 114 (1987). Therefore, the second factor weighs heavily against exercising jurisdiction because Foo is a Singaporean individual with little to no contacts in Nevada. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993) ("The [defendant] doctors are individuals with little or no physical contacts with California…[so] this factor weighs heavily in favor of the doctors.").

NTH argues that "modern advances in communications and transportation have significantly reduced the burden of litigating in another forum." ECF No. 26 at 14 (quotation omitted). Though true, it does not offset the burden on Foo where there are no allegations that he has ever traveled to Nevada or otherwise has significant contacts with Nevada. *See Harris Rutsky*, 328 F.3d at 1132-33 (holding that the burden factor weighed against exercising jurisdiction even when defendants from the United Kingdom frequently traveled to the forum and spoke English); *see also Core-Vent Corp.*, 11 F.3d at 1489-90 (holding that jurisdiction over Swedish individuals would be unreasonable even though defending the lawsuit "would not be impossible" due to modern advances in communications and transportation).

        c. <u>Conflict with Sovereignty of the Defendant's State</u>

"Litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Harris Rutsky*, 328 F.3d at 1133 (quotation omitted). In particular, "[s]overeignty concerns weigh more heavily when the defendants have no United States-based relationships," so "[i]n determining how much weight to give this factor, [I focus] on the presence or absence of connections to the United States in general, not just to the forum state." *Core-Vent Corp.*, 11 F.3d at 1489.

Foo's connections to the United States are limited to his trademark registration and the 323 orders shipped to the United States. NTH seeks only the determination and enforcement of its rights under United States and Nevada trademark and unfair competition law, so there is no apparent conflict with Singapore law. *Ayla*, 11 F.4th at 984. Overall, the third factor weighs in favor of exercising jurisdiction.

### d. Nevada's Interest in Adjudicating the Suit

"Nevada has an interest in providing a forum for its residents to litigate disputes" and in adjudicating disputes that cause harm in Nevada. *Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 134 P.3d 710, 715 (Nev. 2006). Because NTH is a Nevada company, this factor weighs in favor of exercising jurisdiction.

### e. Efficient Judicial Resolution

The factor depends "primarily on where the witnesses and the evidence are likely to be located," although it is "no longer weighed heavily given the modern advances in communication and transportation." *Freestream Aircraft*, 905 F.3d at 609 (quotations omitted). Because "witnesses reside in several different fora (including foreign nations)," this factor primarily weighs neutrally. However, because NTH's claims are based on United States and Nevada law, Nevada would provide efficient resolution of the legal questions. *See Ayla*, 11 F.4th at 984. Overall, the fifth factor weighs slightly in favor of exercising jurisdiction.

### f. Convenience and Effectiveness of Relief for Plaintiff

Because NTH is based in Nevada, the sixth factor weighs in favor exercising jurisdiction. However, this factor is not given much weight because "no doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference." *Harris Rutsky*, 328 F.3d at 1133 (simplified).

### g. Exercising Jurisdiction Would Be Unreasonable

Foo has presented a compelling case that the exercise of jurisdiction would not be reasonable. The extent of Foo's purposeful interjection in Nevada is minimal. Moreover, Foo is a Singaporean individual whose small business operates primarily in Singapore and there are no allegations that he has ever traveled to Nevada or has any ongoing connections to Nevada.

11

Therefore, the first two factors of the test outweigh the others. Indeed, the Ninth Circuit considered the following very similar example:

> The fairness prong allows for the argument that the exercise of jurisdiction is not appropriate because a defendant sold only a small number of products to forum residents. If, for example, a Maine resident ran a small business . . . and made a sale to an Arizona resident, the seller may be able to argue successfully that it would not be reasonable to hale him into court in Arizona because of the limited nature of his purposeful interjection into Arizona's affairs or the excessive burden associated with defending himself in the forum.

*Herbal Brands*, 72 F.4th at 1097. Though Nevada has an interest in adjudicating this dispute, when the defendant is an "individual citizen[] of a foreign country who lack[s] connections to the United States and whose purposeful interjection into the forum state has been very limited, that interest must give way." *Core-Vent Corp.*, 11 F.3d at 1490.

        h. <u>Existence of an Alternative Forum</u>

I now evaluate the seventh factor of the reasonableness test because the first six factors suggest that exercising jurisdiction in Nevada is unreasonable. Foo suggests he is amenable to the transfer of the case to a "court of proper jurisdiction" but does not specify a forum. ECF No. 14 at 2. NTH does not address the possibility of alternative fora.

Foo admits that DrinkAid has shipped 87 orders of the product to California (the most orders shipped to any one state), which suggests that California is a potential alternative forum, though that would present some of the same burdens to Foo as defending the suit in Nevada. *Id.* at 8. Nevertheless, the seventh factor weighs slightly against exercising jurisdiction given the existence of other fora, and does not change the outcome of the reasonableness analysis. *See Harris Rutsky*, 328 F.3d at 1133-34.

### *4. Summary*

NTH has not made a prima facie showing that Foo purposefully directed harmful actions at Nevada because there are no facts showing that Foo knew that the order shipped to Nevada would cause harm to NTH in Nevada. However, even if I assume that NTH successfully made a prima facie case of jurisdiction, the exercise of jurisdiction would be unreasonable and would not comport with fair play and substantial justice. Therefore, I grant Foo's motion to dismiss.

## IV. NTH'S MOTIONS FOR INJUNCTIVE RELIEF

NTH moves for a temporary restraining order and a preliminary injunction to restrain the defendants from using the DRINKAID mark in the United States, including "on websites or social media made available to residents of the United States." ECF Nos. 4; 5; 20-1 at 2. NTH argues that injunctive relief is appropriate because the similarity of the DRINKADE and DRINKAID marks and related products are likely to cause consumer confusion, allowing a presumption of irreparable harm. Because I granted NTH's renewed motion to strike in part, I do not consider the corporate defendants' opposition. However, Foo's opposition is before me, and he argues that I should deny injunctive relief because there is a lack of personal jurisdiction over any of the defendants. ECF No. 15 at 2. He also argues that NTH has not shown a likelihood of success on the merits because there are visual distinctions between the two marks, functional differences between the two products, and no evidence of actual consumer confusion though the two products have "coexisted without incident for years." *Id.* at 4.

The legal standard for a temporary restraining order is substantially identical to the standard for a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm,

13

(3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, under the sliding scale approach, the plaintiff must demonstrate (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in the plaintiff's favor, and (4) an injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either test, a preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (simplified). Mandatory injunctions that go beyond maintaining the status quo and instead order a party to take specific action are "particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979) (simplified).

"A federal court may issue an injunction if it has personal jurisdiction over the parties." *Zepeda v. U.S. Immigr. & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "[I]t may not attempt to determine the rights of persons not before the court." *Id.* In other words, I "lack[] authority to grant relief in the form of a temporary restraining order or preliminary injunction where [I have] no jurisdiction over the parties." *Thomas v. Cadence Cap. Invs. LLC*, No. 2:22-CV-07944-SPG-SK, 2022 WL 19076794, at *2 (C.D. Cal. Nov. 3, 2022) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)); *see also Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1061 (9th Cir. 1985) (vacating the district court's order granting a preliminary injunction for lack of personal jurisdiction)).

NTH contends that the exercise of personal jurisdiction is proper because the defendants "purposefully directed [their] activities in Nevada by offering for sale 'Drinkaid' products in

14

Nevada and elsewhere through Drinkaid's website," that its claims are related to the defendants' promotion and sale of products in Nevada, and that exercising jurisdiction over the defendants is reasonable because they knew their activities could subject them to a lawsuit in Nevada. ECF No. 20 at 3. For largely the same reasons that are discussed above as to the lack of personal jurisdiction over Foo,[3] I conclude that NTH has not made a "clear showing" that I may exercise personal jurisdiction over the corporate defendants. *Mazurek*, 520 U.S. at 972 (simplified).

Because there was no communication between the parties, such as a cease-and-desist letter, prior to the lawsuit and no non-conclusory allegations that the defendants knew NTH was harmed in Nevada, it is unlikely that the defendants knew that their conduct would cause harm in Nevada. *Herbal Brands*, 72 F.4th at 1091, n.2. Additionally, the information contained in Foo's filings about the defendants' business operations likely makes the exercise of jurisdiction unreasonable. The extent of the defendants' purposeful interjection in Nevada is a single shipment of DrinkAid. Defending a suit in Nevada would be a heavy burden on their small business based in Singapore, especially as they have no significant ongoing contacts or operations in Nevada. Therefore, NTH has not shown that exercising personal jurisdiction over the corporate defendants would likely comport with due process, so I deny the motions for injunctive relief.

//

//

//

//

---

[3] The reasonableness analysis as to Foo applies almost identically to the corporate defendants because there are no substantial distinctions between Foo's conduct and the corporate defendants' conduct, except that Foo applied for and owns the DRINKAID trademark.

15

## V. CONCLUSION

I THEREFORE ORDER that plaintiff Never Too Hungover, LLC's renewed motion to strike **(ECF No. 25) is GRANTED in part**. I will not consider ECF Nos. 14 and 15 with respect to defendants DrinkAid, LLP and DrinkAid Wellness PTE. LTD. The Clerk of Court will not strike ECF Nos. 14 and 15 from the record, as they remain valid as to defendant Ryan Foo.

I FURTHER ORDER that defendant Ryan Foo's motion to dismiss **(ECF No. 14) is GRANTED**. The Clerk of Court is instructed to terminate defendant Ryan Foo.

I FURTHER ORDER that plaintiff Never Too Hungover, LLC's motions for a temporary restraining order and a preliminary injunction **(ECF Nos. 4, 5) are DENIED**.

I FURTHER ORDER that plaintiff Never Too Hungover, LLC must serve all defendants with a copy of this Order by email within two business days of the docketing of this Order.

DATED this 9th day of January, 2024.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE